**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| FRIENDS FOR HEALTH: SUPPORTING THE NORTH SHORE HEALTH CENTER, an Illinois nonprofit corporation, and TERRY KASS, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> *v.* <br><br> PAYPAL, INC., a Delaware corporation, and PAYPAL CHARITABLE GIVING FUND, a Delaware nonprofit corporation, <br><br> *Defendants*. | Case No. 17-cv-1542 |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Friends For Health: Supporting the North Shore Health Center ("Friends For Health") and Terry Kass ("Kass") bring this class action complaint against Defendants PayPal, Inc. ("PayPal") and PayPal Charitable Giving Fund ("PayPal Giving Fund") (collectively, "Defendants"). Plaintiffs, on behalf of themselves and all others similarly situated, allege as follows upon personal knowledge as to their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## NATURE OF THE ACTION

1.      Defendant PayPal operates an online-payment processing service through its website, www.paypal.com.

2.      In 2013, PayPal added a new platform to its website, supposedly to make it easier for customers to donate money to their favorite non-profit charities around the world. At that time, PayPal also created Defendant PayPal Giving Fund to process and disburse the charitable donations made through its platform. According to PayPal, "our giving platform enable[s] people

to seamlessly support their communities and the causes for which they feel most passionate."[1]

3.    On its face, PayPal Giving Fund is an admirable endeavor; however, in practice, it falls woefully short of that mission on numerous fronts. Specifically, PayPal Giving Fund is currently (i) listing charities on its website that are not registered to receive donations; (ii) failing to inform donors that unregistered charities will not receive their donations; (iii) failing to notify unregistered charities that donations have been made to them; and (iv) redirecting unclaimed donations from the intended unregistered recipient charities to organizations of their own choosing (without notice to the donor or intended recipient). As described in detail below, tens of thousands of generous individuals after placing their trust in PayPal, have made donations, that, unbeknownst to them, have never reached their chosen charity. Llikewise, thousands of charities have been deprived of much needed funds they never knew were even intended for them.

*            *            *

4.    On the PayPal Giving Fund website, PayPal states "[d]onate to a cause you care about with PayPal. Choose from over a million charities now."[2] PayPal also repeatedly promises its customers—in no uncertain terms—that 100% of their donations will go to whichever charity they choose within the PayPal giving platform. In many instances, Defendants further induce donors to give through their platform by promising, in email solicitations, to add 1% to each donation.

5.    The PayPal giving platform contains an extensive database of charities to which its customers can choose to donate. Customers can search the database using PayPal's search bar (if they have a particular charity in mind), or they can browse the charities by popularity or

---

[1]    *PayPal Exceeds $971 Million in Charitable Giving This Holiday*, PayPal, Inc. (Jan. 10, 2017), https://www.paypal.com/stories/us/paypal-exceeds-971-million-in-charitable-giving-this-holiday (last visited February 28, 2017).

[2]    *Id*.

category. If a customer's charity of choice is not listed in PayPal's database, PayPal instructs its customers to invite the unlisted charity to participate.

6.     When customers click on a charity, they are taken to a charity profile page created by PayPal that features extensive information about the organization and further categorizes it as "Trusted," indicating that it has been reviewed and confirmed by Defendants. Once a contribution has been made, Defendants immediately send two emails to the donor: (i) a receipt for the donation to the specific charity; and (ii) a tax receipt that confirms the contribution has been made specifically to the donor's chosen charity.

7.     While this charitable vehicle seems straightforward, there's a catch. Despite the repeated promises, the money donated by PayPal's customers through the giving platform will only be delivered to their chosen charities if, *and only if*, those charities have already set up a business account with PayPal and a separate account with PayPal Giving Fund. If they don't have both of these accounts, or don't set both of them up, they will never receive the donation, despite being listed on the PayPal Giving website.

8.     While many national and international charities have established PayPal Giving Fund accounts, *hundreds of thousands* of smaller charities (those that have the hardest time fundraising) have not. Yet, PayPal Giving Fund nonetheless lists those same charities as potential donation recipients without their knowledge or consent.

9.     To make matters even worse, as a general practice, neither PayPal nor PayPal Giving Fund notify the unregistered charities that a donation has been made to them or that they need to create an account in order to receive the money. Moreover, no effort is made to notify the customer that their chosen charity does not have the necessary accounts to be able to receive the funds and that the funds will not be delivered as promised (and instead Defendant sent receipts

showing the exact opposite).

10.     Without any form of notice, if the customer's chosen charity doesn't establish the requisite accounts and subsequently claim the donations within six months, Defendants take control of the money and donate it to an organization of their choosing without regard to the intention, beliefs, or desires of the donor. The end result of this practice is that donors put their trust in Defendants to deliver their donations, only to have their donations surreptitiously redirected to unknown entities, including those that serve different causes and different communities than the intended recipient.

11.     Plaintiff Terry Kass is just one consumer out of many that trusted PayPal Giving Fund to facilitate her philanthropy. Plaintiff Kass donated a combined amount of $3,250 to thirteen different national and local-level charities through PayPal's giving platform. Unbeknownst to Kass, even though PayPal giving platform profile pages for all thirteen charities already existed, only three of them were actually registered with Defendants, and only those three could receive donated funds. As such, instead of delivering a combined $3,250 to thirteen different charities, Defendants only delivered a combined $100, *or 3% of her donation*, to those three charities. The remaining $3,150—which Plaintiff Kass donated to ten local-level charities—was withheld from the intended organizations.

12.     Plaintiff Friends For Health is one of the ten charities to which Plaintiff Kass attempted to donate, and one of the thousands of charities that are featured on PayPal's website that have never registered accounts with PayPal Giving Fund.

13.     Plaintiffs are just two of thousands of individuals and organizations that have been deprived of (i) their goal of helping charitable organizations, (ii) knowing their supporters, or (iii) much needed funds to which they are entitled. As such, PayPal Giving Fund is a failed

vehicle for matching donors and recipients, and instead stands as an obstruction to achieving the important goals of thousands donors and charities nationwide.

14.     Plaintiff Kass, on behalf of herself and all other similarly situated individuals, seeks to compel PayPal Giving Fund to deliver all donations that have been withheld from the designated charities, with interest, and where appropriate, with the promised 1% additional donation, as well as a declaration that Plaintiff Kass and other similarly situated individuals' tax submissions to state and federal revenue agencies may properly identify the charities that they had intended to receive the donation when making their charitable contributions. Friends For Health, on behalf of itself and all other similarly situated organizations, seeks actual and statutory damages against Defendants, including the delivery of donations they have unlawfully withheld, with interest, and where appropriate, with the promised 1% additional donation.

## PARTIES

15.     Plaintiff Friends For Health: Supporting the North Shore Health Center is a not for profit corporation organized under the laws of the State of Illinois, with its principal place of business located at 1840 Green Bay Rd., Highland Park, Illinois 60035.

16.     Plaintiff Terry Kass is a natural person and a citizen of the State of Illinois.

17.     Defendant PayPal, Inc., is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 2211 North First Street, San Jose, California 95131.

18.     Defendant PayPal Charitable Giving Fund is a not for profit corporation existing under the laws of the State of Delaware, with its principal place of business located at 2150 I Street, NW, Washington, D.C. 20005.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the putative Class is a citizen of a state different from the Defendants, (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) none of the exceptions under the subsection apply to this action.

20.     Additionally, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiff Friends For Health alleges claims arising under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, a federal statute. Moreover, Plaintiff Friends For Health's other claims are so related to its claims under the Lanham Act that they form part of the same case or controversy.

21.     This Court has personal jurisdiction over Defendants because they solicit and transact significant business in this District, and the unlawful conduct alleged in the Complaint occurred in this District.

22.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Plaintiffs Kass and Friends For Health reside in this District, and a substantial part of the events giving rise to these claims occurred in this District.

## COMMON FACTUAL ALLEGATIONS

### PayPal Promises Its Customers That 100% Of The Money They Donate Through the Giving Platform Will Be Delivered To Their Chosen Charities

23.     PayPal operates a payment processing service that facilitates online money transfers.

24.     In 2013, PayPal created PayPal Giving Fund, a 501(c)(3) non-profit organization whose mission is "to raise funds for charitable purposes online, primarily in the eBay Inc. and PayPal marketplaces."[3] PayPal then partnered with PayPal Giving Fund to process and disburse

---

[3]     *Form 990 Return of Organization Exempt From Income Tax*, PayPal Charitable Giving

donations made through its giving platform to certain charities.

25.     The PayPal giving platform is located at www.paypal.com/fundraiser/hub, a subdomain of PayPal's corporate website. PayPal manages and controls its website, including its giving platform, and creates all of the content displayed on its webpages.

26.     The headline of PayPal's giving platform page invites customers to "Donate to a cause you care about with PayPal. Choose from over a million charities now." (*See* <u>Figure 1</u>.)



(<u>Figure 1</u>.)[4]

27.     Notably, according to Defendant PayPal's 2015 securities filings, *only 29,000 charities* had registered accounts with PayPal Giving Fund. Yet, the Defendants claim that consumers can donate to "over a million charities now", which, if true, would require over a 3,000% growth of charity enrollments, or 961,000 *additional enrollments* from the previous year.[5]

---

Fund, *available at*
*https://www.paypalobjects.com/webstatic/ppgf/PPGF_2015_form_990_tax_return.pdf*.
[4]      *Fundraiser*, PayPal, Inc., https://www.paypal.com/fundraiser/hub (last visited February 28, 2017).
[5]      *PayPal Exceeds $971 Million in Charitable Giving This Holiday*, PayPal, Inc. (Jan. 10, 2017), https://www.paypal.com/stories/us/paypal-exceeds-971-million-in-charitable-giving-this-holiday (last visited February 28, 2017).

28.     PayPal's giving platform also represents that "100% of your donation goes to the charity you choose when you donate with PayPal Giving Fund." (Figure 1.) In this way, PayPal expressly promises that all of the money donated through its giving platform is sent to the donors' chosen organization.

29.     Next to that promise, there is a blue hyperlink that states "Learn More." Clicking on the link displays the bottom portion of the giving platform webpage, as depicted in Figure 2.



(Figure 2.)[6]

30.     There, PayPal explains the giving platform process in more detail:

- Find the cause you love. Search by name, category, or state.

- Donate. Choose an amount or enter your own.

- 100% gets to the cause and you'll get a tax receipt by email.

This explanation is again reinforced at the bottom of the page, where PayPal repeats its promise that "[y]our donation will be processed and disbursed to your selected charity…100% of your donation will reach the charity of your choice."

---

[6]     *Fundraiser*, PayPal, Inc., https://www.paypal.com/fundraiser/hub (last visited February 28, 2017).

31.     During certain times of the year, PayPal further induces consumers to donate through its platform by offering to add 1% to each donation. (*See* Figure 3 below.)



(Figure 3, showing 1% offer and redacted to protect Plaintiff's privacy.)

32.     To search for a charity on the giving platform, customers can use PayPal's search function or browse through lists of categorized charities. Using the search function returns a list

of matching charities to which customers can supposedly donate. (*See* Figure 4, below.)



(Figure 4, showing the results of a search for "Friends for Health: Supporting the North Shore Health Center".)[7]

33.    As depicted in Figure 4, above, the search results returned by PayPal contain the names, and on some occasions the marks, of matching organizations located within the giving platform along with a corresponding "Donate" button. Clicking on the "Donate" button opens a profile page that PayPal created for the chosen charity. (*See* Figure 5, below.)

---

[7]      *Fundraiser*, PayPal, Inc., https://www.paypal.com/fundraiser/hub/?keywords=Friends+for+Health%3A+Supporting+the+North+Shore+Health+Center&category=&state= (last visited February 28, 2017).



(Figure 5.)[8]

34.     As depicted in Figure 5, the profile page that PayPal created for each charity

contains the charity's name, trade or service mark (if it has one), or other representative marks,

mission statement, EIN number, a promise that "100% of your donation will go to your chosen

cause," and that PayPal will pay all fees associated with the transaction.

35.     To make a donation, customers enter a donation amount and click on the "Donate

Now" button next to the charity's name. Directly underneath the "Donate Now" button, PayPal

again promises that "100% will go to the charity." PayPal repeatedly promises that "100%" of

the money donated (and in some cases 101% of the donation) will reach the intended

---

[8]     *Friends for Health: Supporting the North Shore Health Center*, PayPal, Inc.,
https://www.paypal.com/fundraiser/charity/1899254 (last visited February 28, 2017).

organization to induce its customers to use its giving platform instead of donating the money directly to the organizations themselves or through a competing service. Likewise, the donation portal offers the option of remaining anonymous when making a donation, implying that, absent choosing to remain anonymous, the donation will be made in the donor's name.

36.     Even more troubling, the profile page assures the donor that the charity is a "trusted organization," stating "[w]e confirm the status of all *participating* charities, organizations, and agencies." (Emphasis added). In so doing, the profile page explicitly represents that the charity is a willing and knowing participant in PayPal Giving Fund. Yet, this statement is patently false for thousands of unregistered organizations appearing in the PayPal Giving Fund profile list without their knowledge or consent. Defendants set up the giving platform to create the false impression that they are affiliated with each of the listed charities, when in reality, the vast majority of organizations are ineligible to receive donations from PayPal Giving Fund because they are not registered.

37.     Once a donor submits their donation, PayPal emails him or her a confirmation as well as a tax receipt showing the donation as being made to the chosen charity.

***Despite Its Promises, PayPal Refuses To Deliver Any Donations To Charities That Don't Have Accounts with Both Defendants***

>   *PayPal leads donors to believe that their chosen charity is already registered with PayPal Giving Fund*

38.     Unfortunately for its customers and their chosen charities, Defendants' promise to deliver 100% of the donations is false—Defendants refuse to deliver *any* donations to a charity unless it first opens a business account with PayPal and a separate account with PayPal Giving Fund. Even charities with active PayPal accounts are ineligible to receive funds unless and until they create a separate PayPal Giving Fund Account and subsequently claim those donated funds.

*PayPal leads donors to believe their chosen charity is registered with PayPal Giving Fund*

39.     Customers who donate through the giving platform are never made aware of this hidden condition, and thus believe that their entire contribution has been donated to their chosen charity without any further steps.

40.     Indeed, PayPal makes the following statement on its giving platform webpage:

Don't see your favorite charity? Enrolling is quick and simple. Invite them to visit https://www.paypal.com/givingfund

(Figure 6.)[9]

41.     The import of this statement is that all of the charities listed on the website (*i.e.*, the ones that customers "see" on the giving platform) have *already registered with Defendants*. Thus, even if PayPal's hidden registration condition was disclosed to its customers (it wasn't), they still would have believed—based upon PayPal's own statements—that their chosen charities were registered and eligible to receive donations based upon the statement above.

*PayPal often fails to provide notice of donations to unregistered organizations*

42.     Moreover, as a general practice, neither Defendant notifies unregistered charities that they are holding donations for them. Instead, Defendants transfer the donations to an interest bearing account, with the interest accruing to PayPal Giving Fund's benefit.

43.     If the unregistered charity does not create the requisite accounts within six months, their donations are confiscated by Defendants and redirected to unknown organizations of Defendants' choosing.

44.     Nonetheless, even when unregistered charities happen to discover that donated funds are being withheld from them and register for the requisite accounts, Defendants

---

[9]     *Fundraiser*, PayPal, Inc.,
https://www.paypal.com/fundraiser/hub/?keywords=Friends+for+Health%3A+Supporting+the+
North+Shore+Health+Center&category=&state= (last visited February 28, 2017).

nonetheless refuse to promptly deliver their donations and instead continue to hold onto the money for additional time in order to generate more revenue for themselves from the accruing interest.[10] This practice both enriches Defendants and deprives the charities of the time-value of their donations.

45.     Moreover, even in instances where Defendants do provide enrolled charities with their donations, they fail to provide the them with the identity of the donors, even when the donors have not chosen to donate anonymously.

46.     Indeed, when Plaintiff Kass made her donations through the giving platform, she specifically elected not to check the "anonymous" box. (*See* Figure 5.) Nonetheless, even the three charities that previously registered accounts with Defendants have no record or receipt of any funds contributed by Kass for that period.

47.     Donors like Plaintiff Kass who choose not to remain "anonymous" want their information conveyed to the charities so that the charities know who is contributing to their cause, and so they can follow up with additional information regarding the charity, its success, its needs, and its fundraising efforts. This two-way communication is crucial for the charities' continued fundraising activities moving forward.

48.     By failing to provide this information, as requested by the donors, Defendants deprive the charities of the ability to cultivate their donors. This practice makes it impossible for charities to acknowledge and thank individuals for their charitable contributions. It also precludes the charity from being able to follow up regarding their programming, events, progress and other important communications with their supporters who specifically did not wish to be

---

[10]     In fact, PayPal routinely relies on this tactic of withholding funds from its customers in order to generate accrued interest revenue for itself. *See, e.g.*, *In re PayPal Litigation*, No. 5:02-cv-1227 (N.D. Cal.); *Zepeda v. PayPal, Inc.*, No. 4:10-cv-02500-SBA (N.D. Cal.), *Fernando, et al., v. eBay, Inc., et al.*, No. 4:10-cv-02500-SBA (N.D. Cal.).

anonymous.

49.     Most charities avail themselves of opportunities to list their donors by name on their websites, in their annual reports, and other printed materials. By withholding the names of the donors, Defendants thwart the charities' ability to acknowledge and list the donors on their rolls. Such conduct severely hampers future fundraising efforts by preventing charities from contacting previous donors to solicit additional donations. Likewise, in many instances, the failure to thank a donor or include them on their donor lists, though not the fault of the intended recipient charity itself, can be perceived negatively by donors and dissuade them from making future contributions.

50.     Though a substantial amount of money is generated through the interest that accrues on the withheld donations (especially considering PayPal's representation that more than $7 billion was donated through the giving platform in 2016), the primary reason that Defendants created the giving platform was to force charitable organizations that might not have otherwise created PayPal business accounts to open and utilize such accounts in their daily business, thus generating revenues for PayPal through these additional fees and transactions. Additionally, Defendants created the giving platform to enhance PayPal's corporate reputation by appearing to be legitimately affiliated with over a million non-profit organizations.

51.     The strategy of broadcasting an affiliation with charities and charitable causes is known as "cause related marketing" or "CRM."[11] Numerous studies have shown that by associating with charitable organizations or causes, for-profit companies can substantially increase their sales and market share, better motivate their employees, improve their corporate

---

[11]     *See generally Cause Related Marketing: Consumers' Perceptions and Benefits for Profit and Non-Profits Organisations*, Francisca Farache, *et al.*, BAR, Curitiba, July/Sept. 2008, v. 5, n.3, art. 3 p. 210–224.

and brand image, and also generate positive publicity.

52.    Here, PayPal represents to the public that it is affiliated with—and has the

sponsorship and approval of—"over a million charities." In reality, neither PayPal nor PayPal

Giving Fund have any relationship with a majority of the charities featured on the giving

platform.

53.    As a result, Defendants currently are withholding donations from thousands of

charities, many of which are local-level organizations that desperately need all of the money they

can get to meet their budget and deliver aid to their communities.

## FACTS SPECIFIC TO PLAINTIFF TERRY KASS

54.    In November of 2016, Plaintiff Kass received an email from PayPal encouraging

her to make year-end donations through PayPal Giving Fund. The email indicated that donating

through PayPal Giving Fund would result in an additional 1% donation from PayPal.

55.    She received the same email again on December 30, 2016. (*See* Figure 7.)



(Figure 7, redacted by removing Plaintiff's email address to protect her privacy.)

56.     The email was sent from paypal@mail.paypal.com, and featured PayPal's brand symbol.

57.     Kass followed the link to the PayPal giving platform webpage and searched for over twenty organizations that she wished to support with charitable contributions, including Plaintiff Friends For Health. Thirteen of the twenty organizations she searched for appeared in the results along with a corresponding profile page created by PayPal.

58.     On each profile page, Kass was again presented with the charity's name, mission statement, EIN, an assurance that it was "trusted" by PayPal, a promise that 100% of the funds donated would be delivered to it, and frequently, the charity's representative mark. Based upon PayPal's representations, and the fact that many of the charities she searched for did not appear on the list, Plaintiff believed that the other thirteen organizations were participants and associated with PayPal Giving Fund. Plaintiff specifically made the choice to use the PayPal Giving Fund platform, rather than make donations directly to the organizations, because of the representations made by PayPal.

59.     Plaintiff Kass initially made a donation to a local legal aid clinic in order to test the system. Following her submission, she received an email confirmation and a tax receipt from PayPal that reflected the correct amount and recipient. The email expressly stated that she had made a "Donation via PayPal Giving Fund for [the legal aid clinic]" and unequivocally promised that "[PayPal Giving Fund] will send your donations to [the legal aid clinic], your chosen charity, so they can better serve their mission." The email further identified the "Benefitting Charity" as the legal aid clinic, and directed Kass to "save this receipt for tax purposes."

60.     Understandably believing that her donation would be processed and disbursed to the legal aid clinic according to those representations, Kass thereafter made a number of other

17

donations to charities of her choosing through the giving platform. In all, Kass donated a combined $3,250 to thirteen[12] different charities, including $100 to Friends For Health.

61.     Kass made these donations under the reasonable belief that her chosen charities would receive all of the money that she donated to them through the giving platform. Indeed, in making her donation to one of the listed but unregistered charities, Kass went through the process of searching for the organization on the PayPal giving platform, and comparing its representative mark, logo, and other information on its giving platform profile page, with the marks, logos, and information on the organization's website to ensure that her desired charity was the entity listed on the platform.

62.     Unfortunately, only three of the thirteen organizations had a registered account with PayPal Giving Fund. At the time of the donations, Defendants did not in any way inform Plaintiff Kass that ten of her organizations were not registered and therefore would not receive the donated funds.

63.     Likewise, Defendants generally fail to inform charities about the donations they are holding for them or notify them that they must open up new accounts in order to obtain the money.

64.     Only by chance, after speaking with an employee of the legal aid clinic to which she made her initial donation, did Plaintiff Kass realize her donation had not been received as the Defendants had represented. Plaintiff contacted PayPal on multiple occasions, and was *repeatedly* told that all of her donations had reached their intended destinations. Only after

---

[12]     Plaintiff Kass made donations to the following unregistered organizations: Friends for Health: Supporting the North Shore Health Center, Kol Hadash Humanistic Congregation, Highland Park-Highwood Legal Aid Clinic, Chicago Foundation for Women, DC Central Kitchen, Hands of Peace, Township High School District 113, Protect Our Winters, Life Span, and Highland Park Community Foundation.

insisting that this was, in fact, false, did a PayPal employee inform her in writing that the organizations were not registered and provide a list reflecting the status for each donation.

65.     It was also through these communications that Plaintiff Kass learned that if these organizations did not register and claim the donation within six months, that PayPal would "redistribute these funds to similar charities."

66.     Had it not been for this encounter, Plaintiff Kass would have believed that all her donations had reached their intended destinations.

67.     Making this failure to notify charities of donated funds worse, is the fact that the legal aid clinic mentioned above had an account with PayPal. Yet, despite having the legal aid clinic's contact information, and payment account information, Defendants refused to notify the organization of Kass's (or any) donation made to it through the platform.

68.     Had Kass known that her chosen charities would not receive the full 101% of her donations, that Defendants had no relationship at all with her chosen charities, or that Defendants would not inform the intended recipient charities of the fact that she was the donor of the funds at issue or the date and amount of such donations, she would not have donated through the giving platform.

## FACTS SPECIFIC TO PLAINTIFF FRIENDS FOR HEALTH

69.     Plaintiff Friends For Health is one of the 501(c)(3) charities listed on PayPal's giving platform.

70.     Friends For Health was established in 2002 to assist the efforts of the Lake County Illinois Health Department and Community Health Center through acts of volunteerism and philanthropy. The goal of Friends For Health is to ensure that proper medical, dental, and wellness care is available for the people of Lake County, Illinois, by offering funding aid and

healthcare training services to assist in the delivery of care to its community.

71.　　Friends For Health relies on the donations of individuals like Plaintiff Kass and members of the Donor Class in order to deliver these services and support its organization at little to no cost to the individuals and communities that it aids.

72.　　Defendants capitalize upon the goodwill and recognition generated by Friends For Health by using its full name in its search results, as well as a profile page that also features its mission statement and EIN number, among other things.

73.　　On December 30, 2016, Plaintiff Kass navigated to the Friends For Health profile page shown in Figure 5 above and made a donation in the amount of $100.

74.　　Plaintiff Friends For Health was not notified by Defendants that Kass had made a donation to it through the giving platform until over a month after the donation was made.

75.　　Friends For Health is in no way affiliated or associated with Defendants, and had never given permission to either Defendant to use its name or any other information on the website.

76.　　Ultimately, it was Plaintiff Kass that first notified Friends For Health that she donated $100 to it through the giving platform, and that PayPal Giving Fund would withhold the money until Friends For Health registered for accounts with both Defendants. Defendants did not convey this information to Friends For Health until more than a month had elapsed from the time of Kass's donation.

77.　　Friends For Health staunchly objects to Defendants' practice of forcing non-profits like itself to register two new accounts in order to receive funds which are rightfully theirs.

78.　　Friends For Health is not now, nor has it ever been affiliated with, connected to,

or associated with the Defendants. Likewise, it does not now, nor did it ever sponsor or approve of the use of either of the Defendants' services.

## CLASS ALLEGATIONS

79. **Class Definitions**: Plaintiff Terry Kass brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and a class defined as follows:

> **Donor Class**: All persons in the United States who (1) donated money to an organization through PayPal's giving platform, (2) that PayPal Giving Fund failed to deliver or delayed delivery to that organization, (3) because the organization is not or was not registered with PayPal or PayPal Giving Fund.

Plaintiff Friends For Health brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of itself and two classes defined as follows:

> **Undelivered Funds Class**: All organizations in the United States (1) to which a donation was made through the PayPal giving platform, and (2) that is not registered with PayPal or PayPal Giving Fund.

> **False Affiliation Class**: All organizations in the United States whose (1) names or marks are displayed on PayPal's giving platform, and (2) who are not registered with PayPal or PayPal Giving Fund.

Excluded from the Donor Class, Undelivered Funds Class, and the False Affiliation Class (the "Classes") are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

80. **Numerosity**: The exact number of the members in each Class is unknown and not

21

available to Plaintiffs at this time, but it is clear that individual joinder is impracticable. The size

of each Class can be identified through Defendants' records.

      81.    **Commonality and Predominance**: There are many questions of law and fact

common to the claims of Plaintiffs and the putative Classes, and those questions predominate

over any questions that may affect individual members of the Classes. Common questions for the

Classes include, but are not necessarily limited to the following:

**Donor Class**:

    a)    Whether PayPal Giving Fund's actions violate the District of Columbia's Consumer Protection Procedures Act (DC Code §§ 28-3901, *et seq.*);

    b)    Whether PayPal Giving Fund's misconduct described above was committed knowingly;

    c)    Whether PayPal Giving Fund's statements constitute and intentional misrepresentation or omission; and

    d)    Whether PayPal Giving Fund's misconduct described above warrants an award of punitive damages.

**Undelivered Funds Class**:

    a)    Whether Defendants have been enriched by their conduct;

    b)    Whether the Undelivered Funds Class had a protected property interest in the funds donated to them;

    c)    Whether Defendants interfered with a property interest the Undelivered Funds Class had in the funds donated to them; and

    d)    Whether members of the Undelivered Funds Class suffered a detriment as a result of Defendants' conduct.

**False Affiliation Class**:

    a)    Whether the Defendants' actions violate the Lanham Act (15 U.S.C. §§ 1051 *et seq.*);

    b)    Whether the Defendants systematically used the names, marks, and/or likenesses of members of the False Affiliation Class without seeking any form of consent;

c)     Whether this use of the False Affiliation Class's information falsely represented an affiliation, connection, or association between Defendants and the False Affiliation Class members;

d)     Whether this use of the False Affiliation Class's information falsely represented the False Affiliation Class members' approval or sponsorship of the Defendants' services;

e)     Whether the Defendants benefitted from the use of the False Affiliation Class's information;

f)     Whether the False Affiliation Class members suffered economic harm as a result of the use of this information; and

g)     Whether the manner in which Defendants used the Class members marks and other information was likely to lead to confusion among consumers as to any sponsorship or affiliation between the members of the Class and the Defendants.

82.     **Typicality**: Plaintiffs' claims are typical of the claims of other members of the Classes, in that Plaintiffs and the members of the Classes sustained damages arising out of Defendants' uniform wrongful conduct.

83.     **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes, and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interest antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiffs.

84.     **Policies Generally Applicable to the Classes**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes, and making final injunctive relief appropriate with respect to the Classes as a whole. Defendants' policies challenged herein apply and affect members of the Classes uniformly and Plaintiffs' challenge of these policies hinges on Defendants' conduct with respect to the Classes as respective wholes, not on facts or

law applicable only to Plaintiffs. Plaintiffs and the members of the Classes have suffered harm and damages as a result of Defendants' unlawful and wrongful conduct.

85.     **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendants' misconduct. Even if members of the Classes could sustain such individual litigation, it still would not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## FIRST CAUSE OF ACTION
### Violation of the Lanham Act, 15 U.S.C. § 1125(a)
### (On behalf of Friends For Health and the False Affiliation Class against Defendants)

86.     Friends For Health incorporates the foregoing allegations as if fully set forth herein.

87.     The Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, is a federal statute that serves to protect the intellectual property of businesses across the nation. In particular, the Act seeks to prohibit the unlawful use of a business's name, trademarks (if any), and other information in a way that confuses or deceives consumers as to the source, affiliation, or sponsorship of a good or service.

24

88.     Here, Defendants' use of Friends For Health's and the False Association Class's names, representative marks, and/or other information constitutes false association and/or false endorsement which proximately caused an injury to Friends For Health and other members of the False Affiliation Class in in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

89.     Specifically, Defendants' giving platform features the names, EINs, locations, representative marks (if any), and the descriptive mission statements of Friends For Health and all of the other False Affiliation Class members in order to induce potential donors into using the giving platform to make charitable contributions to those organizations, despite the lack of any affiliation with, or sponsorship of, the Defendants by members of the False Affiliation Class.

90.     The use of this assortment of information is likely to, and does, cause confusion, cause mistake, and/or deceive consumers as to whether the Defendants are offering their services with the sponsorship or approval of Friends For Health and other members of the False Affiliation Class, and likewise that they are affiliated, connected to, or associated with them.

91.     By reason of and as a direct and proximate result of Defendants' false representations, Defendants have caused damage to Friends For Health and the False Affiliation Class members' businesses by causing donors to make contributions through the giving platform, which results in the donations being withheld from by PayPal Giving Fund for significant periods of time before they are received by the False Affiliation Class members, if ever.

92.     In other words, donors would not have made their donations through the giving platform but for Defendants' misrepresentations regarding their affiliation, connection, and association with the False Affiliation Class members.

93.     Defendant PayPal Giving Fund benefitted from each of these donations by accruing interest on them, and ultimately using the funds for purposes of its own choosing after

25

the funds sit undisbursed in its accounts for six months.

94.     Likewise, Defendant PayPal received a tangible and direct benefit in the form of enhanced corporate reputation, as well as an increase in consumer recognition and participation, and, ultimately, increased revenues as a result thereof.

95.     Accordingly, Friends For Health, individually and on behalf of the False Affiliation Class, seeks an injunction prohibiting the use of their names, marks, and information by the Defendants without their consent, disgorgement of all revenues generated by Defendants as a result of the use of this information, and an award of actual and trebled damages, including the amount of the donations which were directed to members of the False Affiliation Class, but were instead redirected by PayPal Giving Fund, as well as the lost time value of any monies that were donated through the Defendants with the intent that they be received by members of the False Affiliation Class, along with costs and reasonable attorneys' fees.

**SECOND CAUSE OF ACTION**
**Conversion**
**(On behalf of Friends For Health and the Undelivered Funds Class against Defendants)**

96.     Friends For Health incorporates the foregoing paragraphs as if fully set forth herein.

97.     Numerous donors used PayPal to transfer funds to PayPal Giving Fund for the express purpose of conveying those funds to Friends For Health and other members of the Undelivered Funds Class.

98.     Friends For Health and other members of the Undelivered Funds Class have a protected property interest in these funds.

99.     Defendants intentionally and/or negligently, and without authorization or consent, gained control of the donated funds which rightfully belong to Friends For Health and other members of the Undelivered Funds Class. Defendants then exercised control, dominion, or

ownership of these donated funds, and/or dispossessed Friends For Health and the Undelivered Funds Class of the donated funds properly belonging to them.

100.    In doing so, Defendants intentionally and/or negligently intermeddled with, damaged, and/or deprived Friends For Health and the other members of the Undelivered Funds Class of the use of their funds.

101.    As a result of Defendants' interference with Friends For Health and the other Undelivered Funds Class members' use of their funds, Friends For Health and other members of the Undelivered Funds Class have suffered, and will continue to suffer, damages, including in the form of any interest accrued upon the donated funds rightfully belonging to them.

**THIRD CAUSE OF ACTION**
**Unjust Enrichment**
**(On behalf of Friends For Health and the Undelivered Funds Class against Defendants)**

102.    Friends For Health incorporates the foregoing paragraphs as if fully set forth herein.

103.    Defendants knowingly received a direct monetary benefit from Plaintiff Kass and the Donor Class in the form of donations which were to be processed and delivered to Friends For Health and the Undelivered Funds Class.

104.    Defendants did not perform their services as represented to Kass and the Donor Class. Instead of processing and delivering the payments to Friends For Health and the Undelivered Funds Class, Defendants withheld and retained those donations, received a benefit in the form of accrued interest on those donations, and likewise benefitted by maintaining control over any funds that were never delivered to the intended recipients.

105.    Defendants appreciate or have knowledge of such benefits.

106.    Under principles of equity and good conscience, Defendants should not be

permitted to retain the benefits of any donations that they wrongfully withheld and used to the detriment of Friends For Health and the Undelivered Funds Class.

107.    Friends For Health, individually and on behalf of the Undelivered Funds Class, seeks the restitution of all monies that Defendants have unjustly received as a result of the conduct alleged herein, including disgorgement of any and all revenue received as a result of such donations (*e.g*, interest accrued from said funds).

**FOURTH CAUSE OF ACTION**
**Accounting**
**(On Behalf of Friends For Health and the Undelivered Funds Class against Defendants)**

108.    Friends For Health incorporates all allegations as if fully set forth herein.

109.    Defendant PayPal Giving Fund fraudulently accrued a substantial number of donations from various donors utilizing Defendant PayPal's payment processing platform. As previously alleged, these funds were donated for the express purpose of being conveyed to Friends For Health as well as other members of the Undelivered Funds Class.

110.    Defendants PayPal, Inc. and/or PayPal Giving Fund maintain exclusive control over the funds donated through PayPal, Inc.'s payment platform, and have cached, invested, and distributed these donations without input from the donors or intended recipients of those funds. All transaction records related to these funds are exclusively within the control of Defendants. Friends For Health, as well as members of the Undelivered Funds Class have an inadequate legal remedy in that they cannot determine the precise amount of pecuniary injury that they have sustained as a result of Defendants' conduct, nor can they determine what entity currently controls the funds that are rightfully theirs.

111.    As a result, Friends For Health, individually and on behalf of the Undelivered Funds Class, seeks an order requiring Defendants to provide a full and complete accounting of

28

all transactions or records relating to any and all deposits, accrued interest, transfers, and disbursements of any and all donations that were made by any party with the intent that a charity that was previously, or is presently, listed on the giving platform be the recipient of such donation.

### FIFTH CAUSE OF ACTION
### Violation of the DC Consumer Protection Procedures Act, §§ 28-3901 *et seq*.
### (On behalf of Plaintiff Kass and the Donor Class against PayPal Giving Fund)

112.    Plaintiff Kass incorporates the foregoing allegations as if fully set forth herein.

113.    The District of Columbia Consumer Protection Procedures Act, §§ 28-3901 *et seq*. ("DCCPPA"), prohibits the use of deceptive and unconscionable business practices in the marketplace.

114.    The DCCPPA assures that a proper mechanism exists to remedy and deter the use of such practices.

115.    Plaintiff Kass is a consumer under the DCCPPA because she provides an economic demand for PayPal Giving Fund's donation processing, and charity verification services. Additionally, Kass would, and did, purchase or receive the use of these services by making donations through PayPal Giving Fund.

116.    PayPal Giving Fund is a merchant under the DCCPPA because it, through the ordinary course of business, either directly or indirectly provides consumer goods or services to its customers and the general public.

117.    Specifically, PayPal Giving Fund provides consumer services by processing charitable donations for consumers, verifying the legitimacy and validity of charitable organizations, and providing a means through which consumers can manage the tax benefits of their charitable donations.

118.    Further, the unlawful conduct alleged herein occurred in, was directed to, and/or

emanated from the District of Columbia where PayPal Giving Fund's headquarters is located, where funds donated through the giving platform are sent, from which those same funds are controlled after donation, and from where it made decisions regarding marketing materials, consumer directed representations, and the processing and disbursement of donations.

119.    In marketing these services, PayPal Giving Fund misrepresents, omits, and/or conceals a number of material facts to its consumers in order to secure their business.

120.    First, PayPal Giving Fund misrepresents that its services have the sponsorship, approval, connection with, and certification of numerous non-profit organizations with which it has no prior relationship.

121.    Second, PayPal Giving Fund advertises its services without the intent to sell or deliver them as advertised or offered. Namely, PayPal Giving Fund misrepresents a material fact of the transaction, representing that its services actually deliver 100% of donated funds to the intended recipient, when the actual amount of funds that reach the intended charities is far less. PayPal Giving Fund fully intended that these services would not be delivered as offered, as it knew that it did not have any established relationship with these organizations at the time its services were marketed.

122.    Finally, PayPal Giving Fund repeatedly represented that the funds which donors committed to PayPal Giving Fund with the intent that they reach a specific non-profit had been supplied in accordance with a previous representation, when they had not. Specifically, PayPal Giving Fund repeatedly represented that 100% of the funds it was provided were then distributed to the proper intended recipients. Likewise, PayPal Giving Fund repeatedly represented that millions of people had donated millions of dollars to various charities, when in reality, many of these donations had simply been redirected at PayPal Giving Fund's whim, and not disbursed at

the direction of the individual donors. This falsity is again reinforced through the receipt emails sent to donors after their donation, indicating that the charity of their choosing would be the recipient of their donated funds.

123.    This conduct not only violates the express statutory provisions of the DCCPPA, but also constitutes common law fraud in a sufficient manner to invoke the protections of the DCCPPA.

124.    In particular, PayPal makes a number of false representations on the PayPal Giving Fund website, including that 100% of every donation is conveyed to a consumer's chosen charity and that the PayPal Defendants are affiliated with the listed organizations.

125.    However, PayPal Giving Fund knew the truth behind these representations. Namely, that many of the organizations listed on the website are not affiliated with either it or PayPal and that 100% of the donated funds will *not* be received by the identified charity absent the charity being enrolled with both it and PayPal. Despite this knowledge, PayPal Giving Fund does nothing to correct these representations, and instead stays silent and collects the proceeds from these falsehoods.

126.    PayPal Giving Fund concealed and/or omitted this information with the intent that consumers would rely upon the representations made by it and PayPal and donate through their platform to the benefit of both Defendants.

127.    Facts that affect the price or value of a service are always material. Thus, PayPal Giving Fund's omission and concealment of the material fact that its services do not provide the value represented—delivery of the full value of a donor's donation to a specified charity—was material to Kass and the Donor Class.

128.    Likewise, Kass and the Donor Class would not have donated through PayPal

Giving Fund had they known that it had no affiliation with the charities of their choosing. Particularly since the lack of any affiliation between the chosen charity and PayPal Giving Fund prevents the chosen charity from receiving any funds.

129.    PayPal Giving Fund omitted and/or concealed these facts with the intent to deceive consumers as to its relationship with the listed charities, how donated funds would be disbursed, and induce them to utilize its services in order to generate additional revenues for itself.

130.    PayPal Giving Fund had a duty to disclose the fact that it did not actually deliver 100% of consumers' donations to the charities of their choosing, and that it had no association with many of the listed charities because: (i) it was in a superior position to know such information as it conducted the transactions in question and was fully aware of how its donation processing actually occurred, (ii) it knew such information would be important to its customers, and (iii) Kass and the Donor Class could not have readily discovered such information on their own.

131.    As a result of this conduct, Kass and other members of the Donor Class suffered actual damages, in the form of the full dollar amount of the donations that they attempted to make through PayPal Giving Fund.

132.    PayPal Giving Fund's unlawful and deceptive business practices occurred during the course of trade or commerce, and were a material and direct cause of the injuries sustained by Kass and the members of the Donor Class.

133.    Plaintiff Kass seeks an order: (i) permanently enjoining PayPal Giving Fund from continuing to engage in the unlawful and deceptive conduct described here; (ii) requiring PayPal Giving Fund to pay treble damages, or statutory damages of $1,500 per violation, whichever is

greater; (iii) an award of punitive damages upon a showing of evidence; (iv) an award of reasonable attorneys' fees; and (v) any other relief the court deems proper.

## SIXTH CAUSE OF ACTION
### Unjust Enrichment
### (On behalf of Plaintiff Kass and the Donor Class against PayPal Giving Fund)

134.    Plaintiff Kass incorporates the foregoing paragraphs as if fully set forth herein.

135.    PayPal Giving Fund knowingly received a direct monetary benefit from Plaintiff Kass and the Donor Class in the form of donations which were to be processed and delivered to charities of their choosing.

136.    PayPal Giving Fund did not perform its services as represented to Kass and the Donor Class. Instead of processing and delivering the payments to their chosen charities, PayPal Giving Fund withheld and retained those donations, received a benefit in the form of accrued interest on those donations, and likewise benefitted by maintaining control over any funds that were never delivered to the intended recipients.

137.    PayPal Giving Fund appreciates or has knowledge of such benefits.

138.    Under principles of equity and good conscience, PayPal Giving Fund should not be permitted to retain the benefits of any donations that it wrongfully withheld and redirected to the detriment of Plaintiff Kass and the Donor Class.

139.    Plaintiff Kass, individually and on behalf of the Donor Class, seeks the restitution of all monies that PayPal Giving Fund has unjustly received as a result of the conduct alleged herein, including disgorgement of any and all revenue received as a result of such donations (*e.g*, interest accrued from said funds).

## SEVENTH CAUSE OF ACTION
### Accounting
### (On behalf of Plaintiff Kass and the Donor Class against PayPal Giving Fund)

140.    Plaintiff Kass incorporates all allegations as if fully set forth herein.

141.     Defendant PayPal Giving Fund fraudulently accrued a substantial number of donations from various donors utilizing Defendant PayPal's payment processing platform. As previously alleged, these funds were donated for the express purpose of being conveyed directly to the charities of Kass's and the other Donor Class Members' choosing.

142.     PayPal Giving Fund maintains exclusive control over the funds donated through PayPal's payment platform, and has cached, invested, and distributed donated funds without input from the donors or intended recipients of those funds. All transaction records related to these funds are exclusively within the control of PayPal Giving Fund. Plaintiff Kass and other members of the Donor Class have an inadequate legal remedy in that they cannot determine the precise amount of pecuniary injury that they have sustained as a result of PayPal Giving Fund's conduct, nor can they determine what entity currently controls the funds they donated for the express purpose of being disbursed to identified charities.

143.     Moreover, as a result of PayPal Giving Fund's conduct, Plaintiff Kass and the Donor Class have been issued tax receipts by PayPal Giving Fund that do not accurately reflect the charitable contributions that they've made through PayPal Giving Fund. As such, an accounting to determine the identity of the recipients of such funds is also necessary in order for members of the Donor Class to submit accurate tax information resulting from their charitable contributions to state and federal revenue agencies.

144.     As a result, Plaintiff Kass, individually and on behalf of the Donor Class, seeks an order requiring Defendant PayPal Giving Fund to provide a full and complete accounting of all transactions or records relating to any and all deposits, accrued interest, transfers, and disbursements of any and all donations that were made by any party with the intent that a charity that was previously, or is presently, listed on the giving platform be the recipient of such

donation.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, pray that the Court

enter an Order:

A.  Certifying this case as a class action defined above, appoint Terry Kass and Friends For Health as Class Representatives, and appoint their counsel as Class Counsel;

B.  Declaring that PayPal Giving Fund's actions described herein constitute a violation of the DCCPPA;

C.  Declaring that the Defendants' actions described herein constitute a violation of the Lanham Act;

D.  Declaring the rights and obligations that exist between Defendants and members of the Unpaid Funds Class;

E.  Declaring that the donations redirected by PayPal Giving Fund rightfully belong to the charities identified by the donors at the time of their donations;

F.  Declaring that Kass and the Donor Class may properly identify the intended recipients of their donations on any state or federal tax documentation they submit for any year in which they've donated through PayPal Giving Fund;

G.  Requiring Defendants to conduct a full and complete accounting of all transactions involving any funds that were donated to them with the intent that they be received by any member of the Undelivered Funds Class;

H.  Requiring Defendants to provide the names of each donor that did not request to be anonymous, along with the amount and date of their donation, to the intended recipient charities;

I.  Awarding injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia,* an order prohibiting the Defendants from engaging in the wrongful and unlawful acts described herein;

J.  Awarding Plaintiffs and the Classes actual, treble, and statutory damages, as well as restitution where appropriate;

K.  Awarding punitive damages where applicable;

L.  Awarding Plaintiffs and the Classes their reasonable litigation expenses and

35

attorneys' fees;

M.      Awarding Plaintiffs and the Classes pre- and post-judgment interest; and

N.      Granting such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiffs request trial by jury of all matters that can be so tried.

Respectfully Submitted,

**FRIENDS FOR HEALTH: SUPPORTING THE NORTH SHORE HEALTH CENTER** and **TERRY KASS**, individually and on behalf of all others similarly situated,

Dated: February 28, 2017

By: /s/ Benjamin H. Richman
        One of Plaintiffs' Attorneys

Jay Edelson
jedelson@edelson.com
Benjamin H. Richman
brichman@edelson.com
Christopher L. Dore
cdore@edelson.com
Ari J. Scharg
ascharg@edelson.com
EDELSON PC
350 N. LaSalle St., 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370

Michael H. Moirano
mmoirano@mgklaw.com
Claire Gorman Kenny
cgkenny@mgklaw.com
MOIRANO GORMAN KENNY, LLC
135 South LaSalle Street, Suite 3025
Chicago, Illinois 60603
Tel: 312.614.1260

*Attorneys for Plaintiffs and the Classes*