**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FRIENDS FOR HEALTH: SUPPORTING THE NORTH SHORE HEALTH CENTER, an Illinois nonprofit corporation, DC CENTRAL KITCHEN, a District of Columbia nonprofit corporation, HIGHLAND PARK-HIGHWOOD LEGAL AID CLINIC, an Illinois nonprofit corporation, PROGRAM FOR EARLY PARENT SUPPORT, a Washington nonprofit corporation, KOL HADASH HUMANISTIC CONGREGATION, an Illinois nonprofit corporation, and TERRY KASS individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 17 CV 1542<br><br>Judge Robert W. Gettleman |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| PAYPAL, INC., and PAYPAL CHARITABLE GIVING FUND | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Friends for Health: Supporting the North Shore Health Center, DC Central Kitchen, Highland Park-Highwood Legal Aid Clinic, Program for Early Parent Support, Kol Hadash Humanistic Congregation (the Charity Plaintiffs) and Terry Kass ("Kass") filed an eight-count amended complaint against defendants PayPal, Inc., and PayPal Charitable Giving Fund ("Giving Fund")[1] based on a donation platform operated by defendants. Plaintiffs' complaint

---

[1] PayPal is a Delaware corporation, and its principle executive offices are in San Jose, California. The Giving Fund is a 501(c)(3) charity and charitable giving platform headquartered in Washington, D.C. PayPal is the sole member of the Giving Fund in the United States. For simplicity's sake, the court will refer to them collectively as "defendants."

alleges the following: violation of the Lanham Act, 15 U.S.C. § 1051, et seq. (Count I); conversion (Count II); unjust enrichment (Counts III and IV); violation of the DC Consumer Protection Procedures Act, D.C. Code § 28-3901, et seq. (Counts VII and VIII); and seeks a complete accounting of all transactions relating to donations made through the Giving Fund (Counts V and VI). Defendants have moved, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §1, et seq., to stay the proceedings and compel arbitration. For the reasons discussed below, defendants' motion is granted.

## BACKGROUND

PayPal provides digital and mobile payment services for consumers and merchants worldwide. The Giving Fund is accessible through a "Cause Hub" on PayPal's website, and allows individuals to make donations to charities maintained in a database through their PayPal accounts. This donation system is designed to work as follows: once a donation is made through PayPal, the Giving Fund issues a tax receipt to the donor, aggregates the funds with other donations, and issues them to the charity in a lump sum payment. According to plaintiffs, defendants either fail to deliver, or delay in delivering, donations made through PayPal. Specifically, Kass alleges that she donated to thirteen charities through the Giving Fund in December 2016, and the charities either did not receive her donation or had no record of it. Plaintiffs claim that charities that do not have PayPal accounts receive donations made through the Giving Fund either in an untimely way, or not at all, and that when they do receive donations, they do not receive valuable donor information. Plaintiffs further allege that PayPal established the Giving Fund to enhance its corporate reputation and entice charities to set up PayPal accounts when they otherwise would not, all to the charities' detriment.

Each of the plaintiffs maintains a PayPal account, and has for varying lengths of time. Kass has been a PayPal user for the longest time, since 2004. The user agreement in effect when Kass opened her account did not contain a mandatory arbitration provision, but it did contain a dispute resolution provision, and also specified that PayPal could amend the agreement at any time, with the terms taking effect thirty days after being posted to PayPal's website. PayPal amended its user agreement in 2012, adding a mandatory arbitration provision, which reads as follows:

> **Agreement to Arbitrate. You and PayPal each agree that any and all disputes or claims that have arisen or may arise between you and PayPal shall be resolved exclusively through final and binding arbitration, rather than in court, except that you may assert claims in small claims court, if your claims qualify. The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate.**

The following paragraph of the user agreement provides:

> **YOU AND PAYPAL AGREE THAT EACH OF US MAY BRING CLAIMS AGAINST THE OTHER ONLY ON AN INDIVIDUAL BASIS AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE ACTION OR PROCEEDING.[2]**

In October 2012, PayPal posted the amendment to its user agreement on its website and emailed all PayPal users to notify them of the amendment, specifically noting that users would be bound to arbitrate disputes they had with PayPal unless they opted out of the agreement to arbitrate by December 1, 2012.[3] Kass denies receiving this email, or reviewing the updated user agreement on PayPal's website, and did not opt out of the arbitration provision. The Charity Plaintiffs established PayPal accounts after PayPal amended its user agreement to include an

---

[2] All bold and capitalized font in original.
[3] PayPal users were given the right to opt out of the arbitration agreement while continuing to maintain their PayPal accounts, or to discontinue those accounts.

arbitration provision,[4] between 2015 and 2016. Those user agreements also contained a mechanism through which users could opt out of the arbitration provision while maintaining their PayPal accounts. None of the Charity Plaintiffs opted out.

The Charity Plaintiffs claim that they are not obligated to arbitrate their claims because defendants have failed to establish that the agreements upon which they rely are valid. The Charity Plaintiffs further argue that, even if the arbitration agreements are valid, they are not enforceable because defendants have not shown that plaintiffs waived their right to have their claims resolved by an Article III judge. Kass joins in the Charity Plaintiffs' arguments, and further argues that, even if the arbitration provision found in PayPal's user agreement as of 2012 is valid, it is not enforceable as to her because it is not an amendment to the agreement she accepted in 2004, and she did not accept it in 2012. Kass also argues that, even if she were obligated to arbitrate her dispute with PayPal, that obligation would not extend to her claims against the Giving Fund.[5]

## DISCUSSION

### I. Standard of Review

Under the FAA, federal courts are in the gatekeeper position of determining whether a dispute is one that the parties intended to arbitrate and is therefore arbitrable. See AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643 (1986). The FAA was passed to ensure that valid agreements to arbitrate would be enforced by courts. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985). Even still, a party cannot be forced to arbitrate a claim without previously agreeing to arbitrate that claim. See Kiefer Specialty Flooring, Inc. v. Tarkett, 174

---

[4] The arbitration provisions differ in some respects to the one quoted above, none of which are material to this case.
[5] None of the plaintiffs argues that their dispute is beyond the scope of the arbitration agreement.

F.3d 907, 909 (7th Cir. 1999); see also AT&T Techs., 475 U.S. at 648 ("[A]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration."). Rather, "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." Gore v. Alltel Comm'cns, LLC, 666 F.3d 1027, 1032 (7th Cir. 2012) (internal quotation omitted). Accordingly, "[w]hen deciding whether the parties agreed to arbitrate a certain matter, courts generally should apply ordinary state-law principles that govern the formation of contracts." Druco Rest., Inc., v. Steak N Shake Enterp., Inc., 765 F.3d 776, 781 (7th Cir. 2014).

Under the FAA, "arbitration may be compelled if the following three elements are shown: a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." Zurich Am. Ins. Co. v. Watts Indus., Inc., 417 F.3d 682, 687 (7th Cir. 2005) (citing 9 U.S.C. § 4). Courts review a motion to compel arbitration under a summary judgment standard in accordance with Federal Rule of Civil Procedure 56(c). Tickanen v. Harris & Harris, Ltd., 461 F. Supp. 2d 863, 866 (E.D.Wis. 2006). Movants are required to "provide sufficient evidence in support of their claims such that a reasonable jury could return a verdict for them under applicable law." WFC Commodities Corp. v. Linnco Futures Grp., Inc., 1998 WL 834374, at *2 (N.D. Ill. Nov. 25, 1998). "The party opposing arbitration must identify a triable issue of fact concerning the existence of the agreement" and "cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests." Tinder v. Pinkerton Sec., 305 F.3d 728, 735 (7th Cir. 2002). The court may consider exhibits and affidavits regarding the arbitration agreement in question. Reineke v. Circuit City Stores, Inc., 2004 WL 442639, at *1 (N.D. Ill. Mar. 8, 2004).

## II. Analysis

### A. Sufficiency of the Evidence

A party seeking to compel arbitration must first establish that an arbitration agreement exists.[6] Gen. Ass'n of Regular Baptist Churches v. Scott, 549 F. Appx. 531, 533 (7th Cir. 2013). In support of their motion to compel arbitration, defendants submitted the affidavit of Michelle Squires, a Paralegal Specialist who has worked for PayPal since 2003. Attached to that affidavit are PayPal's user agreements from February 13, 2004, through July 27, 2017, and a printed version of an email informing PayPal users of the November 2012 amendments to the user agreement. Plaintiffs attack the sufficiency of this evidence on a number of levels.

Plaintiffs first argue that the Squires declaration fails to lay a proper foundation for the attached documents, and thus fails to properly authenticate them under Federal Rule of Evidence 901(b)(1). According to plaintiffs, the affidavit is deficient for not explaining how the user agreements were preserved and maintained, or how the attachments were generated. The only authority plaintiffs cite to support their argument that such explanations are necessary, however, is a single case from the District of Maryland. See Lorraine v. Markel Am. Ins. Co., 241 F.R.D. 534 (D. Md. 2007). No such requirements are recognized in the Northern District of Illinois, as will be discussed below.

Additionally, plaintiffs attempt to support their argument by selectively quoting case law, which flatly contradicts their position, from this district. Specifically, plaintiffs cite Pearson v.

---

[6] Whether an agreement to arbitrate has been formed is governed by state law. Sgouros v. TransUnion Corp., 817 F.3d 1029, 1034 (7th Cir. 2016). In their memoranda, the parties cite cases applying both Illinois and Delaware contract law. Neither party suggests that there is a substantial difference between the two states' laws. Because the parties do not contend there is a difference, the court need not perform a choice-of-law analysis. See Caisse Nationale de Credit Agricole v. CBI Indus., Inc., 90 F.3d 1264, 1271 n.3 (7th Cir. 1996). Instead, the court applies the law of the forum state. Nationwide Advantage Mortg. Co. v. GSF Mortg. Corp., 827 F.3d 577, 580 (7th Cir. 2016).

6

United Debt Holdings, LLC, 123 F. Supp. 3d 1070 (N.D. Ill. 2015), arguing that "[d]istrict courts routinely consider agreements containing arbitration provisions . . . but only if the proponent of arbitration authenticates the document containing an arbitration provision[.]" Id. at 1073. What plaintiffs fail to inform the court is that the next five words are: "through an affidavit or otherwise." Id. The deficiency recognized by the court in Pearson was that the defendant failed to authenticate the arbitration agreement it attached to its motion to compel at all, even though it could have done so by simply supplying an affidavit of a person with knowledge of the agreement to authenticate it, as defendants have done in the instant case. Id. at 1073–74. In fact, in refusing to consider an arbitration agreement that was not authenticated in any way, the Pearson court noted that "[t]he bar for authentication of an arbitration agreement is not high" and can be met with "evidence sufficient to support a finding that the matter in question is what its proponent claims." Id. at 1073 (citing Smith v. City of Chicago, 242 F.3d 737, 741 (7th Cir. 2001); Fed. R. Evid. 901(a)).

The instant case looks much less like Pearson and much more like the cases it cites for demonstrating proper authentication of documents. For example, a sworn affidavit of a bank employee who asserts knowledge of loan agreements and customer account information through her employment, and attests that those documents are "true and correct," is sufficient to authenticate loan agreements. Achey v. BMO Harris Bank, N.A., 64 F. Supp. 3d 1170, 1175 (N.D. Ill. 2014). Similarly, a sworn affidavit of an employee who attests that she has access to a company's business records, and that those submitted to the court are true and correct, is sufficient to authenticate an arbitration agreement. Conway v. Done Right Recovery Servs., Inc., 2015 WL 1989665, at *3 (N.D. Ill. Apr. 30, 2015). Indeed, "[t]estimony of a witness with

7

knowledge . . .that an item is what it is claimed to be" is all that is required to authenticate evidence. Fed. R. Evid. 901(b)(1).

Defendants have met their burden of demonstrating that the attachments to the Squires affidavit are authentic. In her affidavit, Squires attests that she has personal knowledge of the user agreements and how they are entered into through her nearly fifteen years of employment at PayPal. According to Squires, it would have been impossible for any of the plaintiffs to create a PayPal account without accepting the user agreement. She further attests that she has personally managed information regarding updates to the user agreements, and that all of the attached user agreements, and the email, are true and correct copies. Additionally, Squires attests that she has personal knowledge, gained through her access to PayPal user records, that each plaintiff created a PayPal account, and accepted the user agreement when doing so. The Squires affidavit is sufficient to authenticate the attached documents.

Next, plaintiffs argue that, even if the user agreements are authentic reproductions, they do not establish that plaintiffs accepted their conditions, specifically, the arbitration provision. This argument is a nonstarter. First, the cases plaintiffs cite to support their argument are inapposite: in those cases, because there was no requirement to accept a user agreement prior to creating an account, the courts did not compel arbitration when the parties seeking to compel arbitration could show only that an arbitration provision existed, and then speculated that the party resisting arbitration would have accepted it. See General Association of Regular Baptist Churches, 549 F. App'x 531; Bazemore v. Jefferson Capital Sys, LLC, 827 F. 3d 1325 (11th Cir. 2016). In the instant case, defendants rely not on speculation, but rather on Squires' assertion that each plaintiff opened a PayPal account, and that it would have been impossible to do so without accepting the user agreement.

Plaintiffs, in fact, do not dispute that they opened PayPal accounts, or that they accepted the PayPal user agreement when doing so. Instead, plaintiffs argue that defendants' failure to attach screenshots of PayPal's website to their motion to compel arbitration is fatal to defendants' position. Plaintiffs are mistaken. Indeed, not one case plaintiffs cite holds that screenshots are essential to determining whether the user assented to a user agreement, and the Seventh Circuit has never so held. The closest plaintiffs get is Sgouros v. TransUnion Corp., 817 F.3d 1029 (7th Cir.). In Sgouros, however, the plaintiff submitted screenshots of the TransUnion website in his opposition to arbitration to support his argument that the website was intentionally misleading because it did not indicate that continuing to use the site would result in acceptance of any terms or conditions. Plaintiffs in the instant case make no such claim, and nowhere in Sgouros did the Seventh Circuit suggest that assent to a user agreement found on a website cannot be found absent screenshots depicting the layout of the website. Indeed, numerous courts in this circuit have found such assent under just those conditions, even after Sgouros. See, e.g., Maher v. Microsoft Corp., 2018 WL 1535043, at *1 (N.D. Ill. Mar. 29, 2018); Sherman v. AT&T Inc., 2012 WL 1021823 (N.D. Ill. Mar. 26, 2012); DeJohn v. The .TV Corp., Int'l, 245 F.Supp.2d 913 (N.D. Ill. 2003).

Although Sgouros did not hold that screenshots are an essential component of a court's analysis when determining whether a website user assented to a user agreement, it did suggest that courts use a "reasonable communicativeness test" to determine whether electronic notice of the agreement is sufficient. Sgouros, 817 F.3d at 1034-35. Under that test, the court asks whether the website adequately communicates the terms and conditions of the agreement, and whether the circumstances gave the user reasonable notice of those terms. Id. In the instant case the answer to those questions is yes.

According to Squires, the Charity Plaintiffs each had to complete a registration process to open a PayPal account. To complete that process, they had to affirmatively check a box, or click a button, indicating that they accepted the user agreement. Before doing so, each Charity Plaintiff had the opportunity to review the terms of the user agreement, including the arbitration provision, either through a scroll box or through a link to the user agreement. To put any doubt to rest as to whether the Charity Plaintiffs were given reasonable notice of the terms and conditions of the user agreement, defendants attached to their reply memorandum screenshots of the web form in effect at the time that each Charity Plaintiff registered with PayPal.[7] Those screenshots make clear that the Charity Plaintiffs were given reasonable notice of the user agreement and its terms before they agreed to it as part of the PayPal registration process.

The analysis for Kass is different. It is undisputed that the user agreement that Kass accepted when she registered her PayPal account in 2004 did not contain a mandatory arbitration provision. Instead, the 2004 user agreement provided that either the user or PayPal could elect to arbitrate disputes involving $10,000 or less. Additionally, the 2004 user agreement stated that it could be amended at any time, and that any amendments would be posted on PayPal's website, and take effect thirty days later. PayPal amended the user agreement in 2012, and that amendment included an arbitration agreement. According to Kass, she never consented to that agreement, she was not even aware of it, and it is otherwise unenforceable.

Kass first argues that she did not agree to the 2012 amendment to the user agreement because she was unaware of it. Kass supports her argument with a sworn affidavit attached to her response memorandum in which she attests that she never viewed the policy update on

---

[7] Defendants also attached the sworn declaration of Cornelius Greer, PayPal's director of Product Management to verify and authenticate the screenshots. Plaintiffs have not requested leave to file a sur-reply.

PayPal's website, and never received an email in October 2012 informing her of the update. To support her position that she did not receive that email, Kass also attached the sworn affidavit of her rabbi, Adam Chalom,[8] in which Chalom attests that he received a policy update email from PayPal on March 7, 2018, and emailed it to Kass. According to Kass' affidavit, she received no such email. These assertions do not create an issue of fact necessitating a trial.

Kass' denial that she received the 2012 email is not, by itself, sufficient to create a triable issue of fact. Mete v. Sears Holdings Corp., 2014 WL 6613051, at *4 (N.D. Ill. Nov. 21, 2014). Kass provides more, however. Specifically, Kass provides Chalom's sworn statement that he received a policy update email from PayPal on March 7, 2018, and her own sworn statement that she did not. Taken together, these affidavits could lead to the inference that PayPal failed to send the emails to Kass that it sent to other PayPal users. Defendants counter this inference in their reply memorandum with their own sworn affidavit of PayPal attorney, Andrew McElmeel. According to McElmeel, the March 2018 policy update email was sent to PayPal users in "batches," and Kass was included in a batch that was sent March 27, 2018, one week after Kass filed her response memorandum.

Convenient timing aside, McElmeel also asserts that his review of Kass' PayPal account confirms that she was an active PayPal user with no limitations that would have prevented PayPal from sending her the 2012 policy update email. According to the mailbox rule, which the Seventh Circuit extends to emails, "[a] presumption exists that [the email was] properly sent, received, and read." Ball v. Kotter, 723 F.3d 813, 830 (7th Cir. 2013). Kass' conclusory statement that she did not receive the email, with nothing to bolster it, does not rebut this presumption. See Tinder, 305 F.3d at 735 (affidavit denying receipt of arbitration agreement is

---

[8] Chalom is the rabbi at plaintiff Kol Hadash Humanistic Congregation, where Kass is a member.

11

insufficient to create an issue of material fact, even where justifiable inferences are drawn in non-movant's favor). This is particularly so when, in the complaint, Kass claims to have received a number of other emails from PayPal, all related to making donations through the Giving Fund.

In her affidavit, Kass does not explain how and why she is able to recall receiving the emails seeking donations, as opposed to the 2012 email containing the user agreement amendment, or how and why she believes, nearly six years later, that she did not receive the 2012 email. Kass also fails to explain how she can recall, with certainty, that she did not review the 2012 user agreement amendment when it was posted on PayPal's website. Instead, she simply asserts that she did not. Indeed, Kass provides no evidence to support her claim that she was unaware of the 2012 amendment to the user agreement, and therefore fails to rebut the presumption that she received it.

Kass next argues that PayPal's ability to unilaterally amend the user agreement renders the 2012 amendment unconscionable and unenforceable. According to Kass, this conclusion is dictated by California law.[9] Kass' argument ignores a significant body of California law approving of contract provisions that allow unilateral amendments. See, e.g., Ashbey v. Archstone Prop. Mgmt., Inc., 612 F. App'x 430, 432 (9th Cir. 2015) ("[U]nilateral modification provisions . . . are not substantively unconscionable because they are always subject to the limits imposed by the covenant of good faith and fair dealing implied in every contract.") (internal quotation omitted); Serpa v. Cal. Sur. Investigations, Inc., 215 Cal. App. 4th 695, 706 (Cal. Ct. App. 2013) (citing cases).

---

[9] The 2004 user agreement contained a California choice of law provision. The 2012 user agreement contained a Delaware choice of law provision. Because Kass' and defendants' arguments are based on California law, and defendants assert that Delaware law does not compel a different result, the court analyzes Kass' claims under California law.

12

Kass does not acknowledge the above case law, but instead suggests that PayPal's amendment to its 2012 user agreement was not objectively reasonable because it contained a mandatory arbitration provision, and the 2004 user agreement did not. Kass' argument ignores the fact that the 2004 agreement did contain dispute resolution provisions, including, albeit voluntary, arbitration. Consequently, the cases she cites to support it are inapt for not analyzing contract amendments that alter, rather than furnish for the first time, dispute resolution provisions. Additionally, the Ninth Circuit has repeatedly held that opt-out provisions like the one in the 2012 amendment to the user agreement weigh in favor of upholding arbitration provisions under California law. Kilgore v. KeyBank, Nat. Ass'n, 718 F.3d 1052, 1058 (9th Cir. 2013); Circuit City Stores, Inc. v. Ahmed, 283 F.3d 1198, 1199 (9th Cir. 2002).

Finally, Kass argues that the she is not bound by the 2012 amendment because it is not an amendment at all, but rather a completely new agreement to which she did not assent. Kass cites no authority to support this conclusion, and the court knows of none. Kass accepted the 2004 user agreement when she registered for PayPal, and was informed that the agreement was subject to change. Defendants have put forth evidence that Kass was notified of the 2012 amendments, including the arbitration provision, and was given an opportunity to opt out of that provision. She has not rebutted that evidence, and did not opt out of the arbitration provision. Accordingly she is bound by that arbitration agreement, as are the Charity Plaintiffs.

### B. Waiver of Article III Tribunal

Plaintiffs also argue that, even if they did enter into an enforceable arbitration agreement, they did not knowingly and voluntarily consent to waive their constitutional right to have their dispute resolved by an Article III judge. Plaintiffs are incorrect for a number of reasons. First, the only consent required to enforce an arbitration agreement is a valid contract containing one.

Sgouros, 817 F.3d at 1033. Second, the terms of the arbitration agreement that plaintiffs agreed to put this claim quickly to rest: the arbitration agreement explicitly states that issues will be decided by an arbitrator, not a judge, and that any review of the arbitrator's decision by a court is very limited. Third, failure of the parties to bargain over the terms of the user agreement, and unequal bargaining power, do not render the arbitration agreement unenforceable. Carbajal v. H & R Block Tax Servs., Inc., 372 F.3d 903, 906 (7th Cir. 2004) (contracts "offered on a take-it-or-leave-it basis" are not contracts of adhesion). Plaintiffs' argument fails.

### C. Equitable Estoppel

Kass' final argument is that she is not obligated to arbitrate her claims against the Giving Fund even if PayPal's 2012 amendment to its user agreement is valid because her claims against the Giving Fund are unrelated to the user agreement.[10] Assuming they are, Kass' argument still fails. Under Delaware law,[11] a non-signatory to an arbitration agreement can compel arbitration under equitable estoppel principles when "the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Incyte Corp. v. Flexus Biosciences, Inc., 2016 WL 1735485, at *4 (Del. Sup. Ct. Apr. 19, 2016). As discussed above, plaintiffs allege concerted misconduct by PayPal and the Giving Fund. Specifically, plaintiffs allege that PayPal established the Giving Fund to enhance its corporate reputation and entice charities to set up PayPal accounts when they otherwise would not. Plaintiffs further allege that "defendants" unlawfully solicit donations from PayPal customers, and coerce charities into doing business with them by withholding donations. Indeed, the complaint lists dozens of ways in

---

[10] The Charity Plaintiffs do not join in this argument.
[11] Because the court finds that the 2012 amendment to the user agreement is valid, and that agreement contains a Delaware choice of law provision, the court analyzes Kass' argument under Delaware law.

14

which *defendants*, without differentiation, allegedly engage in misconduct. Because each defendant's alleged misconduct is central to plaintiffs' claims against the other, "the Complaint rasie[s] allegations of substantially interdependent and concerted misconduct among Defendants," and equitable estoppel applies. Id. at *7. Plaintiffs are obligated to arbitrate their claims against both defendants.

## **CONCLUSION**

For the reasons discussed above, the court grants defendants' motion to compel individual arbitrations and stay the proceedings (doc. 41).

**ENTER:** **June 12, 2018**

_____
**Robert W. Gettleman**
**United States District Judge**