UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRIENDS FOR HEALTH: SUPPORTING THE NORTH SHORE HEALTH CENTER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PAYPAL, INC. and PAYPAL CHARITABLE GIVING FUND, <br><br> Defendants. | Case No. 17 CV 1542 <br><br> Judge Martha M. Pacold |

**MEMORANDUM OPINION AND ORDER**

      Terry Kass and charities Friends for Health: Supporting the North Shore Health Center, DC Central Kitchen, and Kol Hadash Humanistic Congregation[1] (together, "Charity Plaintiffs") filed this putative class action lawsuit against defendants PayPal, Inc. and PayPal Charitable Giving Fund (together, "Defendants") alleging that Defendants engaged in misconduct related to soliciting and distributing charitable donations. [38].[2] Defendants moved to compel individual arbitration under the Federal Arbitration Act ("FAA"), and the prior judge assigned to the case granted the motion and stayed the case. [64]. Kass, proceeding *pro se*,[3] and Defendants completed arbitration and presently pending before the court are their cross-motions to vacate or confirm the arbitral award rendered in favor of Defendants. [95]; [113]; [123]. For the reasons explained below, Kass's motions to vacate the award are denied and Defendants' motion to confirm the award is granted.

---

[1] Former plaintiffs Highland Park-Highwood Legal Aid Clinic and Program for Early Parent Support voluntarily dismissed their claims with prejudice. [151].

[2] Bracketed numbers refer to docket entries and are followed by page and / or paragraph numbers. Page numbers refer to the CM/ECF page number.

[3] Kass has a law degree but has not practiced law in almost 25 years. [128] ¶ 2.

# BACKGROUND

Kass and the Charity Plaintiffs allege that Defendants set up a charitable contribution platform, the Giving Fund, whereby Defendants promised that, if a person made a donation through the Giving Fund to a listed charity, Defendants would contribute an additional 1% to that charity. [38] ¶ 6. But many of the charities listed on the Giving Fund were allegedly not registered with the platform, had not consented for their name or image to be used, and would not actually receive any donations until they signed up for the Giving Fund. *Id.* ¶¶ 9–10, 12. If the recipient charity failed to register within six months of a donation, Defendants would allegedly transfer donations from that charity to a different charity. *Id.* ¶ 14. Kass alleges that she made donations through the Giving Fund that were not delivered to her chosen charities until the charities either registered with Defendants or after this lawsuit was filed. *Id.* ¶ 15.

After this suit was filed, the prior judge assigned to the case granted Defendants' motion to compel individual arbitration and stay the case. [64]. Accordingly, Kass (without the Charity Plaintiffs) pursued arbitration against Defendants.

Kass and Defendants (together, "the Parties") subsequently began arbitration with the American Arbitration Association ("AAA").[4] [96-1]. In October 2019, the Parties agreed that all hearings would be held in person. [114] at 3 ¶ 4. At a December 2019 meeting between the Parties and the arbitrator, the arbitrator set a schedule for Defendants to file a dispositive motion (which was ultimately styled as a summary judgment motion). *Id.* at 4–5. If the summary judgment motion was denied, the parties would be required to exchange exhibits and information prior to an evidentiary hearing, and the arbitrator could order additional "information exchange" if necessary "to provide for a fundamentally fair process." *Id.* at 5. No discovery was conducted for the summary judgment motion. *Id.* at 3 ¶ 5; *id.* at 40 ¶ 5.

Kass also repleaded her arbitral complaint—ultimately filing an amended complaint in excess of 100 pages. [120] ¶ 5. Although the parties have not submitted the actual briefs filed in arbitration, it is uncontested that Kass filed a 43-page opposition brief coupled with 55 pages of exhibits. *Id.* ¶ 7.

The Parties and arbitrator agreed to hold a hearing on Defendants' dispositive motion. Due to the onset of the COVID-19 pandemic, the Parties agreed to conduct the motion hearing via videoconference instead of in person. [114] at 3 ¶ 6. During the videoconference and before Kass had made her arguments, there

---

[4] Despite having been ordered to arbitrate, the Charity Plaintiffs do not appear to have begun or completed any arbitration. Thus, this order solely concerns Kass's arbitration with Defendants.

were audio problems and the videoconference was changed to a teleconference. *Id.* at 11 ¶¶ 13–14; [120] ¶¶ 10, 12. As a result, Kass was unable to display visual aids and exhibits that she had prepared to use as part of a "10 minute summary" during her argument. [114] at 32; *id.* at 10–11 ¶¶ 12, 14; *see also id.* at 25 (Kass's visual aids). Nevertheless, the arbitrator had at least some of the documents that Kass had intended to display during her argument, and he stated that, although he was not going to look at them during the hearing, he would review them after. *Id.* at 11 ¶¶ 15–16; [122] at 2.

After the hearing ended, Kass asked to submit a "video statement" to explain why summary judgment should be denied. [114] at 32. Defendants objected, arguing that the arbitrator had all of the information he needed to decide the motion and that Kass had been allowed to speak for roughly one and a half hours of the two-hour hearing. *Id.* at 33. The arbitrator sustained Defendants' objection and explained that:

> The two hour hearing allowed Ms. Kass to fully present her case so that I, as arbitrator, fully understood her arguments, especially because she was given most of the allotted time. There is nothing to be gained by more time spent on the hearing to decide the Motion . . . . Her presentation was more than sufficient to explain her side of the case.

*Id.* at 34 (emphasis omitted).

Kass then requested to submit the "visual aids [she] had prepared to utilize" during the motion hearing. *Id.* at 35. These items included one page from the complaint, highlighted Delaware statutes, unidentified "[e]xhibits to support independent legal duty to make certain disclosures when soliciting donations," five highlighted pages from PayPal's "Guide to Online Fundraising," the "[t]otality of information provided from all 'see terms' and 'learn more' links," and Defendants' "Donation Delivery Policy disclosures then and now." *Id.* Kass stated that "[w]ithout those documents, I fear the arbitrator does not have enough information to know that many material facts are in dispute and application of the law is not yet feasible." *Id.* Defendants objected on the basis that the arbitrator's order "was clear that he has what he needs" and that "'visual aids' are not evidence." *Id.* at 36. The arbitrator summarily sustained Defendants' objection. *Id.* at 37.

The arbitrator granted summary judgment in favor of Defendants. The arbitrator explained that the money Kass had donated to various charities was ultimately distributed to those charities, although the distribution was delayed. *Id.* at 49. Kass "relie[d] on this payment delay to justify her case," as it caused Kass "embarrassment . . . because years of continuous giving now appeared to have been broken." *Id.* The arbitrator determined that although Kass's "embarrassment was genuine . . . not every harm, no matter how genuine, is compensable with an award of damages." *Id.* The arbitrator further reasoned that Kass

3

>received substantially what she bargained for because she got her 2016 tax deduction and the charities received their money from [the Giving Fund] early in 2017 . . . which was a few months later than intended by Ms. Kass. Thus, there was at least substantial performance, which is the standard for avoiding a ruling of breach of contract.

*Id.* "Furthermore, since the tort and statutory claims rely upon a failure to perform as contracted, they are without merit." *Id.* The arbitrator recited the standard for summary judgment and held that "[w]hile there are many facts that Ms. Kass believes require discovery to further develop, none, even if resolved against the Respondents, obviate the fact that a few months delay is not so serious as to constitute an actionable breach of contract, or a tort." *Id.* at 50. Accordingly, the arbitrator granted summary judgment to Defendants. *Id.*

Defendants then moved in this court for an order entering judgment on the arbitration award and taxing costs. [95]. Kass moved to vacate the opinion and, later, for leave to supplement her original motion to vacate. [113]; [123].

## LEGAL STANDARD

"Judicial review of arbitration awards is tightly limited. Confirmation is usually routine or summary, and a court will set aside an arbitration award only in very unusual circumstances." *Standard Sec. Life Ins. Co. of N.Y. v. FCE Benefit Adm'rs, Inc.*, 967 F.3d 667, 671 (7th Cir. 2020) (cleaned up). Under the FAA, courts "must grant" an order confirming an arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11" of the FAA. 9 U.S.C. § 9. A court may vacate an arbitration award on only a few specified grounds, such as where the arbitration "award was procured by corruption, fraud, or undue means" or "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy." *Id.* § 10(a)(1), (3). A court may not conduct general "appellate review of the arbitrator's decision" and "[f]actual or legal errors by arbitrators—even clear or gross errors—do not authorize courts to annul awards." *Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 333 (7th Cir. 1995) (internal quotation marks omitted). "The party seeking the vacatur of an arbitral award bears a heavy burden of showing that the vacatur is justified." *Skuja v. AT&T Mobility Servs. LLC*, No. 18-cv-07945, 2021 WL 2105152, at *1 (N.D. Ill. May 25, 2021); *Crosby v. Sears Holding Corp.*, No. 15 C 6396, 2018 WL 1394037, at *2 (N.D. Ill. Mar. 20, 2018). Finally, although courts should construe pleadings filed *pro se* more liberally, the legal standard for vacatur under the FAA remains unchanged for *pro se* parties. *Hurn v. Macy's, Inc.*, No. 17-1200, 2017 WL 6539288, at *2 (C.D. Ill. Sept. 5, 2017), *aff'd*, 728 F. App'x 598 (7th Cir. 2018).

4

## DISCUSSION

### I.  Kass's Motion To Vacate Under 9 U.S.C. § 10(a)(3)

Kass's first motion seeks to vacate the arbitration award under 9 U.S.C. § 10(a)(3) because the arbitrator "was guilty of misconduct in refusing to hear evidence pertinent and material to the controversy." [113] at 1. Specifically, Kass contends that the arbitrator refused to consider exhibits she had prepared for the motion hearing and attempted to submit afterward.

"On procedural and evidentiary matters, federal courts defer to arbitrators' decisions so long as those decisions are reasonable." *Bartlit Beck LLP v. Okada*, 25 F.4th 519, 522 (7th Cir. 2022). "An arbitrator's refusal to receive relevant evidence, standing alone, does not warrant vacating an arbitration award; rather, the arbitrators' failure to consider pertinent evidence must have deprived the [movant] of a fundamentally fair hearing." *Mical v. Glick*, 581 F. App'x 568, 570 (7th Cir. 2014); *Bartlit Beck*, 25 F.4th at 523; *Flender Corp. v. Techna-Quip Co.*, 953 F.2d 273, 280 (7th Cir. 1992). "This standard typically is met only when an arbitrator wrongly excludes the sole evidence on a pivotal issue." *Mical*, 581 F. App'x at 570. A motion to vacate must also be supported by specific evidence in the record. Conclusory assertions are not enough. *See Bartlit Beck*, 25 F.4th at 524; *Hurn v. Macy's, Inc.*, 728 F. App'x 598, 599 (7th Cir. 2018).

Under the AAA consumer arbitration rules, the "arbitrator shall determine what evidence is relevant, and what evidence is material to the case." [120-2] (AAA R-34(b)). "The arbitrator may also exclude evidence that the arbitrator decides is cumulative or not relevant." *Id.* The arbitrator is also empowered to "allow the filing of a dispositive motion if the arbitrator determines that the moving party has shown substantial cause that the motion is likely to succeed and dispose of or narrow the issues in the case." *Id.* (AAA R-33).

Kass has not met her burden to show that vacatur is warranted under 9 U.S.C. § 10(a)(3). First, the record she has submitted to the court is inadequate to allow the court to assess her contention that the arbitrator wrongfully excluded important evidence, let alone issue an order vacating the arbitrator's award. The record before the court does not include (1) Kass's amended arbitration complaint showing what claims she asserted, [120] ¶ 5; (2) the Parties' summary judgment briefing and the exhibits included with that briefing; (3) any details about what Kass's "visual aids" consisted of, aside from a picture where the content of those aids is either obscured or illegible, [114] at 25; and, most importantly, (4) the actual documents Kass believes the arbitrator erred by excluding. On this last point, all the court has to go on is Kass's own characterization of the evidence she intended to submit. *E.g.*, [114] at 14–24. But a party's conclusory assertions about the contents of particular documents or how they would have influenced the arbitrator's award are insufficient. *See Hurn*, 728 F. App'x at 599; *cf. Bartlit Beck*, 25 F.4th at 524

(movant's assertion must be supported by the record). The record shows Kass submitted 55 pages of exhibits with her brief, [120] ¶ 7, but there are no details on what those exhibits were. Without at least some of this information (record evidence showing what was at issue in the arbitration as well as what documents the arbitrator did and did not have), it is impossible to conclude that the excluded evidence was "pivotal" or in fact the "sole evidence" on *any* issue—or that the evidence's exclusion otherwise caused the hearing to be fundamentally unfair. *Mical*, 581 F. App'x at 570. These evidentiary deficiencies alone require denial of Kass's motion on this issue.

Second, even on the extremely limited record before the court, Kass has not shown that the documents she attempted to submit were "the sole evidence on a pivotal issue." *Mical*, 581 F. App'x at 570. The arbitrator granted summary judgment to Defendants on the basis that Defendants had (1) substantially performed under their agreement with Kass by delivering her donations to her requested charities, even taking into account some delay; and (2) Kass did not suffer a cognizable injury. [114] at 49–50. None of the documents Kass specifically identified in her requests to the arbitrator indicated that she was going to submit evidence related to these issues. Kass does not specify all of the documents she asked the arbitrator to look at during the hearing (which he said he would review after). [122] at 2. And for the documents Kass does identify, such as the "GuideStar license agreement," she does not explain how they relate to Defendants' performance or her damages. [114] at 41 ¶ 7; *see also* [113] at 7 (asserting that the GuideStar license agreement related to whether Defendants could solicit certain donations for certain charities "without proper disclosure or permission").

Kass's post-hearing requests are no different. In her first request after the hearing, Kass asked to submit a "video statement" without identifying any documents she intended to show. [114] at 32. And, in her second post-hearing request, Kass identified documents related to (1) the statutory basis for her "solicitation claim"; (2) "Punitive Damages in Delaware for consumer fraud"; and (3) documents related to Defendants' disclosure of various terms and policies. *Id.* at 35. None of these documents appears to be related to the key issues identified by the arbitrator.

Even if the documents Kass intended to submit were material, Kass has not shown and does not argue that these documents are the sole evidence on any pivotal issues identified by the arbitrator in the arbitration award. Nor does the record show that Kass told the arbitrator that the documents she wanted to submit were anything close to being the only evidence on any pivotal issue. At most, Kass stated that without the documents she "fear[ed] the arbitrator does not have enough information to know that many material facts are in dispute and application of the law is not yet feasible." *Id.* at 35. Kass did not alert the arbitrator that the documents she wanted to submit were critical evidence essential to deciding any particular issue. Without giving the arbitrator additional information or warning

the arbitrator that the documents she wanted to submit were the only evidence on some important issue, the court cannot say that the arbitrator's decision to not consider such evidence was unreasonable. *See id.* at 34, 37; *cf. Flender*, 953 F.2d at 281 (excluding evidence that arbitrator "deemed . . . irrelevant" was not "unfair").

Indeed, even Kass's explanations to the court of how the excluded evidence was relevant (explanations apparently not provided to the arbitrator) do not show that the evidence she sought to submit was relevant to the issues of substantial performance and damages, let alone the sole evidence on these issues.[5] *Id.* at 14–24. At best, Kass identifies Delaware statutes that she claims go to the issues of substantial performance and damages. *E.g.*, *id.* at 14 (Kass asserting statute that identifies its "purpose . . . to safeguard the public against fraudulent and misleading charitable/franteral [sic] solicitations" somehow led to "[w]rongful finding that" her tort and statutory claims were based "upon a failure to perform as contracted"). But Kass does not explain how the statutes were material to the arbitrator's rulings and their relevance is not self-evident. *Id.* at 14–16. In any event, the cited statutes are not evidence.

Third, even assuming that the documents Kass attempted to submit were material to the arbitrator's award and the sole evidence on some pivotal issue, she has not shown that the arbitrator acted unreasonably. Kass was afforded the opportunity to submit briefing and exhibits with her opposition to Defendants' motion for summary judgment. She filed a 43-page opposition brief to Defendants' motion along with 55 pages of exhibits. [120] ¶ 7. Defendants contend, and Kass does not dispute, that she could have filed all of the documents she later attempted to submit with her opposition brief.

Kass did not file the exhibits with her brief purportedly because the documents did not become important until after briefing concluded, as the documents addressed allegedly new "arguments [Defendants raised] either in their final reply brief or oral comments" at the hearing. [113] at 3; [122] at 14. Yet the record does not show that Kass ever told the arbitrator the documents needed to be considered for this purpose when she asked to submit the documents. Again, Kass first asked for leave to submit a "video statement" in order to show the arbitrator unidentified "visual aids." [114] at 32. Kass did not state that the visual aids were new evidence necessary to rebut alleged misrepresentations. And the same is true of her second post-hearing request and request during the hearing itself—based on what has been submitted to the court, Kass never told the arbitrator that the

---

[5] Kass does identify a number of items that are purportedly relevant to the issue of fraud and alleged misrepresentations made by Defendants, but the arbitrator's order addressed fraud only with respect to the application of the Limitation of Liability clause in Kass's contract with Defendants—an additional basis supporting the arbitrator's determination that Kass was not entitled to damages. [114] at 49.

7

documents she wanted to submit were necessary to correct any misleading arguments or statements made by Defendants. *Id.* at 35; *see* [122] at 2.

In these circumstances, where Kass had already been allowed to argue for over an hour during the hearing and submit 43 pages of briefing and 55 pages of exhibits, the court cannot conclude that it was unreasonable for the arbitrator to deny Kass's request to submit a ten-minute "video statement," additional exhibits, or, during the hearing, for the arbitrator not to look at an unidentified document while Kass discussed it.[6] This is particularly true given that the only specific documents Kass identified to the arbitrator facially had little relevance to the arbitrator's primary issues of concern—substantial performance of the delivery of Kass's donations and the harm she allegedly suffered—for the reasons already explained. *See Nosbaum v. J.P. Morgan Sec. LLC*, No. 17 C 6202, 2018 WL 3626112, at *5–7 (N.D. Ill. July 30, 2018) (denying motion to vacate under § 10(a)(3) where arbitrators "limited their consideration" of certain evidence).

Finally, Kass's briefing is unclear on whether she is also challenging other aspects of the arbitration. For example, her brief refers to the arbitrator's summary judgment ruling as being "premature," [113] at 1, she argues that the arbitrator failed to adhere to the AAA's rules, [122] at 4–6, and she, at various points, discusses the need to have had a transcript of the arbitration hearing, *id.* at 10. Even if Kass is attempting to raise these arguments, they are not persuasive. "Although they are entitled to fair proceedings, parties that have chosen to remedy their disputes through arbitration rather than litigation should not expect the same procedures they would find in the judicial arena." *Bartlit Beck*, 25 F.4th at 522 (internal quotation marks omitted). "[N]othing in the Federal Arbitration Act requires an arbitrator to allow *any* discovery." *Hyatt Franchising, LLC v. Shen Zhen New World I, LLC*, 876 F.3d 900, 901 (7th Cir. 2017). The arbitrator's decision to address and resolve Defendants' summary judgment motion on the record before him without discovery or additional evidentiary submissions is a procedural decision that Kass has not shown was unreasonable, including for the reasons identified above. Kass's argument about the arbitrator's alleged failure to follow the AAA rules was raised for the first time in her reply brief and is therefore waived. *Berryhill v. Enhanced Recovery Co.*, No. 17 C 8059, 2019 WL 2325999, at *2 (N.D. Ill. May 31, 2019). Even if considered, Kass has not shown that the arbitrator violated any AAA rule. And if Kass believed she needed a transcript of the hearing, she points to nothing that prevented her from hiring a court reporter or

---

[6] As to this last decision by the arbitrator, there is nothing in the record that indicates that the arbitrator did not abide by his stated promise to review the unidentified document after the hearing concluded. Thus, Kass has not shown that the arbitrator refused to consider whatever the unidentified document, or documents, were. [144] at 11 ¶¶ 15–16; *id.* at 41 ¶ 8.

recording the hearing herself,[7] and she never asked to postpone the hearing in order to do so. [120] ¶ 19; *see* [114] at 32. In any event, Kass provides no explanation how lack of a hearing transcript could support vacating the arbitrator's award under the FAA. Any other issues raised by Kass are unpersuasive and/or not a basis to vacate the arbitrator's award.

## II.   Kass's Motion For Leave To Supplement Motion To Vacate

Kass also filed a motion for leave to supplement her original motion to vacate. [123]. Kass contends that, after filing her original motion, she learned that Defendants had obtained the arbitration ruling "through fraud and undue means" under 9 U.S.C. § 10(a)(1) because during the arbitration Defendants did not disclose, and allegedly made representations that were contrary to, agreements Defendants had entered into with various state attorneys general.

Defendants oppose Kass's motion on the basis that it is untimely because it was filed on September 18, 2020, more than three months after the arbitrator rendered his decision on June 19, 2020. *See* [123]; [114] at 50. Under 9 U.S.C. § 12, "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." The Seventh Circuit has held that a motion to vacate must be served within three months of delivery of the arbitral award and strictly enforces that deadline. *See Webster v. A.T. Kearney, Inc.*, 507 F.3d 568, 572–74 (7th Cir. 2007) (affirming denial of motion to vacate filed one day after three-month deadline as untimely).

But, as Kass points out, she is seeking leave to supplement her original motion to vacate that was timely filed. The parties have not cited Seventh Circuit authority on how 9 U.S.C. § 12 applies in this circumstance and whether any timing restrictions apply to a motion to amend or supplement an earlier, timely motion to vacate. Other courts have reached different conclusions on this issue. *See Mike & Sons Constr., Inc. v. Int'l Union of Bricklayers & Allied Craftworkers, Dist. Council #1*, No. 08 C 5150, 2009 WL 2605307, at *2–5 (N.D. Ill. Aug. 25, 2009) (discussing different courts' approaches to this and similar issues). Ultimately, the court need not resolve this issue and assumes (without deciding) that Kass's motion to supplement her original motion to vacate is both proper and timely.

Proceeding to the merits of Kass's motion, Kass contends that, in February 2021, she learned for the first time that Defendants' practices regarding the Giving Fund platform had been investigated by various state attorneys general, ultimately resulting in defendant PayPal Giving Fund entering into an "Assurance of Voluntary Compliance" as well as an "Agreed Final Order" in the case *Illinois ex rel.*

---

[7] AAA's rules allow a party to arrange for a court reporter to transcribe the hearing so long as the other parties and arbitrator are properly notified. [120-2] at 3 (AAA R-27(a)).
9

*Kwame Raoul v. PayPal Charitable Giving Fund, Inc.*, No. 2020 CH 00406 (Ill. Cir. Ct.). The Assurance of Voluntary Compliance is a settlement agreement between defendant PayPal Charitable Giving Fund and the "Multistate"—a group of many different state attorneys general—that became effective on January 14, 2020. [123] at 18, 22. The Assurance recounts how the investigation by the Multistate began around early 2017 and was focused on PayPal Giving Fund's "disclosure and vetting practices." *Id.* at 19–20. According to the Assurance, PayPal Giving Fund "fully cooperated with the Multistate" and "denie[d] any liability." *Id.* at 20–21. PayPal Giving Fund ultimately agreed to follow specific practices regarding its disclosures to donors, continue to cooperate with the Multistate and share information, and make a one-time donation to the National Association of Attorneys General. *Id.* at 21–24. The Assurance expressly states that it is not

> intended to be and shall not in any event be construed or deemed to be, or represented or caused to be represented as an admission or concession or evidence of any liability or wrongdoing whatsoever on the part of [PayPal Giving Fund] or an admission of any fact or violation of any law, rule, or regulation.

*Id.* at 27. The Assurance also states that it was "made without adjudication of any alleged issue of fact or law and without a finding of liability of any kind" and that PayPal Giving Fund "believes that its conduct has been lawful and has not violated any . . . laws or the common law." *Id.* at 27.

In substance, the Agreed Final Order is effectively identical to the Assurance of Voluntary Compliance. The only significant difference is that it is a court-filed stipulation between the Attorney General of Illinois and PayPal Giving Fund. *Id.* at 41. The Order was entered by the Circuit Court of Cook County on January 14, 2020. *Id.* at 47.

Kass contends that Defendants used fraud and undue means to obtain the arbitral award because in the arbitration they did not disclose the Assurance of Voluntary Compliance, the Agreed Final Order, or the underlying Multistate investigation, and they made allegedly false representations when they asserted that Kass's claims were meritless and would require burdensome discovery (among other allegedly false statements).

9 U.S.C. § 10(a)(1) allows a court to vacate an arbitral award "where the award was procured by corruption, fraud, or undue means." To vacate an arbitral award under § 10(a)(1), a movant "must demonstrate that the corruption, fraud, or undue means was (1) not discoverable upon the exercise of due diligence prior to the arbitration; (2) materially related to an issue in the arbitration; and (3) established by clear and convincing evidence." *Gingiss Int'l*, 58 F.3d at 333. The movant must also show "a nexus between the purported fraud and the arbitrator's final decision." *Env't Barrier Co. v. Slurry Sys., Inc.*, 540 F.3d 598, 608 (7th Cir. 2008).

Kass has not met her burden to vacate the award. First, Kass did not address whether the alleged fraud and undue means were discoverable prior to the arbitration until her reply brief and in an attached declaration. [128] at 9–13, 16–18. Arguments and evidence raised for the first time in reply are waived. *Berryhill*, 2019 WL 2325999, at *2. This alone is sufficient to deny Kass's motion.

Second, even setting aside the waiver, Kass has not demonstrated that the Assurance of Voluntary Compliance, Agreed Final Order, or the general existence of the Multistate investigation were not discoverable with the exercise of due diligence. The Multistate investigation began no later than early 2017, [123] at 19, and the Assurance and Order were entered into in January 2020, *id.* at 22, 47. Kass filed her arbitration demand in September 2019, [120-1], Defendants moved for summary judgment in March 2020, [120] ¶ 6, and Kass submitted her opposition brief in May 2020, *id.* ¶ 7. The hearing on the motion was held in June 2020 and the arbitration award was issued later that same month. *Id.* ¶¶ 9; [114] at 50. Kass concedes that the Multistate investigation "became public . . . on or about January 14, 2020" when the Assurance was entered into and the Order was entered by the Circuit Court of Cook County. [128] at 10 (internal quotation marks omitted). And she does not dispute that she could have discovered these documents with the exercise of due diligence. Thus, Kass has not demonstrated that the Multistate investigation, Assurance, and Order were not discoverable prior to Kass filing her opposition brief, let alone the motion hearing. *See Nilssen v. Magnetek, Inc.*, No. 05 C 2933, 2008 WL 1774984, at *3 (N.D. Ill. Apr. 16, 2008) (denying motion to vacate where movant had not shown that "evidence . . . could not have reasonably [been] discovered prior to the issuance of the Arbitration Award"); *Ditkowsky v. A.G. Edwards & Sons, Inc.*, No. 09 C 6563, 2010 WL 625002, at *5–6 (N.D. Ill. Feb. 17, 2010) (denying motion where information "was discoverable upon the exercise of due diligence by the plaintiff prior to the hearing").

Third, Kass has not shown by clear and convincing evidence that Defendants engaged in any fraud or obtained the arbitral award by undue means. Kass has not shown that Defendants had any obligation to disclose the Multistate investigation or its results, and she has not submitted any evidence establishing that Defendants made any misrepresentations or false statements about it. Kass offers selective quotations from Defendants' summary judgment briefing that allegedly were false. One states that Kass did not suffer an injury and that any embarrassment she suffered was due to her own failure to read the terms and conditions of her contract with Defendants. [123] at 8. Other quotations state that Kass "failed to read and/or understand the terms," "advanced a false narrative in the media without any reasonable basis to do so," "incorrectly presumed intricacies," and had "unfounded expectations." *Id.* at 9. Another quotation states that Kass "interfered with [Defendants'] donation distribution in early 2017." *Id.*

The Assurance of Voluntary Compliance and Agreed Final Order do not show that any of those statements by Defendants are false. Those documents say nothing

11

about what Kass may or may not have read or understood, let alone shed light on whether she suffered any compensable injury. Indeed, the Assurance and Order say virtually nothing about the content of PayPal Giving Fund's disclosures or even whether they were misleading—the only facts in either document are basic facts about the donation platform and a short summary of events leading up to the Multistate's investigation. [123] at 18–20. They list "questions" the Multistate had about certain disclosures, *id.* at 19, but these questions are not established facts. And the disclosure practices and policies PayPal Giving Fund agreed to adopt going forward, *id.* at 21–22, do not establish that Defendants' statements were inaccurate or false. Nothing in either document establishes by clear and convincing evidence that the specific statements Defendants made about Kass and her claims were false or somehow constituted "undue means."

Even if the Multistate investigation did somehow undermine Defendants' statements, the bulk of the statements identified by Kass are attorney argument. "[A]rguments are not evidence, and attorneys are permitted to make arguments based on reasonable inferences from evidence that was presented." *Renard v. Ameriprise Fin. Servs., Inc.*, 778 F.3d 563, 569 (7th Cir. 2015). Defendants' arguments do not amount to fraud or undue means. *See id.*

Finally, Kass has not shown that the alleged fraud and undue means shared a nexus with the arbitrator's summary judgment decision. Kass asserts that, by not disclosing the Multistate investigation, Defendants were able to argue in their summary judgment motion that Kass's injuries were not "compensable injuries linked to any action of [Defendants]." [123] at 11. Kass also makes the conclusory assertion that the Multistate investigation was related to "whether the delay [in distributing her donations] was reasonable; caused injury; [and] diminished the value of [Kass's] donations." [128] at 13. But, again, Kass has not submitted her amended complaint or any other documents to establish what exactly her claimed injuries were in arbitration or the specifics of any delay—making it impossible to ascertain any relationship between Defendants' statements, the Multistate investigation, and any other specific facts or issues in the arbitration, including those relied upon by the arbitrator and addressed in his award. Further, as already explained, the Assurance and Order do not set forth specific facts that address these issues (such as how or whether Kass was injured or whether any delay in distributing her donations was reasonable), and Kass does not make any connection between the Multistate investigation and how the arbitrator handled these issues in his final award. Kass's motion is therefore denied.

### III. Defendants' Motion For Entry Of Judgment

The final motion at issue is Defendants' motion for entry of judgment on the arbitration award. [95]. Defendants assert that judgment should be entered under 9 U.S.C. § 9 because the arbitrator's award has not been vacated, and Defendants also seek costs under Federal Rule of Procedure 54(d)(1) as the prevailing party.

Kass did not oppose the motion on its merits. She requested only that a decision on Defendants' motion be postponed until her original motion to vacate was filed.

Kass, however, is not the only plaintiff (at least currently[8]) in this litigation, and Rule 54(b) states that a "court may direct entry of final judgment as to one or more, but fewer than all, claims or parties, only if the court expressly determines that there is no just reason for delay." The Parties do not address Rule 54(b) in their briefing or whether there is no just reason to delay entering final judgment as to Kass.

Accordingly, although Defendants have shown that the motion should be granted and they are entitled to entry of judgment under 9 U.S.C. § 9 and costs, it is premature to do so because Rule 54(b) has not been addressed. Defendants and Kass are therefore directed to file briefs, no longer than five pages, by July 28, 2022, with the court addressing only whether it is appropriate to enter final judgment under Rule 54(b).

## CONCLUSION

Kass's motion to vacate and motion for leave to supplement the motion to vacate are denied. Defendants' motion for entry of judgment remains under advisement. Defendants and Kass are directed to file briefs, no longer than five pages, by July 28, 2022, with the court addressing whether it is appropriate to enter final judgment on the arbitration award under Rule 54(b).

Dated: July 14, 2022                    /s/ Martha M. Pacold

---

[8] The Charity Plaintiffs were dismissed without prejudice and with leave to amend. Their amended complaint, if any is filed, is due by August 4, 2022. [163].